# SAMUEL & STEIN

ATTORNEYS AT LAW

1441 BROADWAY, SUITE 6085, NEW YORK, NY 10018
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

DAVID STEIN
dstein@samuelandstein.com

August 20, 2021

ADMITTED IN
NY, NJ, PA, IL, DC

**VIA ECF**

Hon. Arlene R. Lindsay, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722-9014

    Re:    <u>**Villatoro, et al. v. Suds & Bubbles Inc., et al.**</u>
              *Case Number 20-cv-4972 (ARL)*

Dear Magistrate Judge Lindsay:

    We represent plaintiff Benjamin Villatoro in the above-captioned matter and submit this letter to the Court with the consent of Jasmine Patel, Esq.., counsel for defendants, to report to the Court that the parties have reached an agreement to settle this matter, and so that the Court may assess and approve the settlement agreement. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

    Plaintiff filed his complaint in this matter on October 16, 2020. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the NYLL for failure to pay the minimum wage, failure to pay spread of hours pay, failure to provide wage notices and failure to provide wage statements.

    Specifically, Mr. Villatoro alleged that he was employed by defendants as a car wash attendant from July 2014 through July 2021 (except for roughly three months in 2020 during lockdowns). .He alleged that during the winter (from roughly October through January) he would work about 63 hours per week, and the rest of the year he would work about 73½ hours per week). After the pandemic, however, he only worked about 52½ hours per week. He alleged that he was paid at an hourly rate of pay throughout his employment, starting at $8.00 per hour in 2014 and with numerous subsequent raises: to $9.00 per hour (in 2016), to $10.00 per hour (in 2018), to $11.40 per hour (in October 2020, after this lawsuit was filed), and to $14.00 per hour (in 2021). There were no overtime premiums; he was paid at these rates for all of his pay. Moreover, Mr. Villatoro did not receive spread of hours

premiums even though he worked in excess of ten hours per day. He was initially paid in cash, but starting in 2016 he said that defendants began paying him by a combination of cash and check. Mr. Villatoro alleges that the checks always said 30 hours on them, and the remaining hours, as well as the cash portion of his pay, were not reflected on the paystubs. Finally, he did not receive the wage notice required by the Wage Theft Prevention Act when he was hired; he did not receive one until 2021.

Based on these facts, Mr. Villatoro calculated his estimated damages as follows, if he prevailed at trial on *all* of his claims: $91,000 in actual and liquidated overtime damages under the FLSA and NYLL (Roughly $42,000 of which would be available only under the NYLL), $43,000 in actual and liquidated damages under the NYLL for minimum wage violations, $44,000 in actual and liquidated damages for spread of hours violations, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or accurate paystubs. In other words, Mr. Villatoro would have been owed $188,000.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiff's claims against defendants for a total of $80,000. While the final settlement amount is less than Mr. Villatoro's maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants generally denied plaintiff's allegations about his work schedule; they alleged that he worked a shorter time period than he claimed because of additional gaps in his employment that he had not accounted for, and they further produced handwritten pay reports that purported to reflect that he worked fewer weekly hours than he claimed, and in fact had numerous weeks where he worked no overtime at all.

The case was settled at an early court-ordered mediation, and so Mr. Villatoro did not have a chance to probe the accuracy of defendants' records. Moreover, these records were summaries — they only listed total weekly hours, rather than reflecting daily in and out times. But, if they were believed, they would have reflected that he was owed significantly less money than his calculation. Moreover, defendants contended that Mr. Villatoro had received tips before 2021, which (if they were entitled to claim the benefit of the tip credit) would have reduced the value of his minimum wage claim. In a worst case scenario, his claims might have been worth as little as $50,000.

Mr. Villatoro did not have any records of his own, and his original calculation was based solely on his own recollections about his work history. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. But in this case, defendants did maintain some pay records, and so Mr. Villatoro would have had to overcome the hurdle of convincing a fact-finder that these records were inaccurate. In any case, it

would have been a disputed fact question, with little possibility of resolving the case short of trial.

Additionally, although defendants did not communicate to us that they were financially struggling, the issue of collectability hung over the case. Defendant operates a carwash — an often cash business — and even if Mr. Villatoro had secured his home run damages award after trial, there is serious doubt about whether he could collect in excess of $200,000 (including attorneys' fees) from a car wash.

By agreeing to settle at this juncture, Mr. Villatoro was able to gain a significant percentage of the damages he was potentially owed, without the delay of waiting for trial or the risks attendant with trial. Moreover, he will be receiving his payment in a lump sum, which has significant value for someone in his transient situation. Thus, plaintiff decided to accept defendants' offer.

FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total settlement amount is 43% of plaintiff's maximum possible recovery. And even after attorneys' fees, plaintiff will be receiving complete recovery of his claimed actual <u>and</u> liquidated FLSA damages. He will receive these funds without running any risk or having to prove his claims.

Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). And he will be receiving this money in a lump sum.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and the settlement negotiations were successfully conducted before a mediator under the auspices of the Eastern District's Mediation Program, so the Court can be assured that they were conducted on a arms' length basis. Moreover, prior to entering into the settlement agreement, Mr. Baten, in consultation with counsel, thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiff no longer works for defendants, so there is no risk he will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $736.00 (filing fee, service of process, and Spanish interpreter)[1] and will retain 1/3 of the net settlement (i.e., an additional $26,421.33) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Moreover, it represents an attorneys' fee amount of approximately twice our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 15.30 | $6,010.00 |
| David Nieporent | Senior Associate | $325 | 22.80 | $7,410.00 |
| **TOTAL** | | | **38.10** | **$13,420.00** |

A copy of our time records, maintained contemporaneously, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process and interpreter fees are attached as Exhibit C.

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125. Travel time was billed, as per firm policy, at half the attorney's regular rate.

record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. *See Mendez v. Casa Blanca Flowers, Ltd.*, 2014 WL 4258943, at *6 (E.D.N.Y. July 8, 2014), *report and recommendation adopted*, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff.") (collecting cases); *Tacuri v. Nithin Constr. Co.*, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $200 to $325 for senior associates). Moreover, we have been awarded fees in this range in cases in this district and slightly higher rates in the Southern District.

For example, Judge D'Arcy Hall recently awarded us those rates. *Lopez et al. v. Ki Moon Restaurant Inc., et al.*, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021). And in the past we have been awarded fees of $375 and $325 in wage and hour cases in this district. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018). And in the Southern District, we were recently awarded fees of $425 and $325, respectively, by Magistrate Judge Netburn in *Solano v. Andiamo Café Corp.*, 2021 WL 2201372 (S.D.N.Y. June 1, 2021), and fees of $400 and $325, respectively, by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016); by Judge Briccetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018); by Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 2018 WL 8996336 (S.D.N.Y., September 28, 2018); by Judge Oetken in *Zhu v. Salaam Bombay, Inc., et al.*, 2019 WL 76706 (January 2, 2019), and by Judge Daniels in *Martinez et al. v. 2009 Bamkp Corp. et al.*, 2019 WL 7708607 (S.D.N.Y. December 10, 2019), *report and recommendation adopted by* 2020 WL 409691 (S.D.N.Y. January 23, 2020).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

  For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith, and adjourn next week's conference *sine die*. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                Respectfully submitted,

                David Stein

Enc.

cc: Jasmine Patel, Esq. (via ECF)